WILBUR, SECRETARY OF THE INTERIOR, v. UNITED STATES EX REL. KRUSHNIC.

No. 63. Argued December 6, 9, 1929.—Decided January 6, 1930.

*Mr. George C. Butte,* Special Assistant to the Attorney General, with whom *Solicitor General Hughes,* and *Mr. E. C. Finney,* Solicitor, Department of the Interior, were on the brief, for petitioner.

*Messrs. Langdon H. Larwill* and *Chester I. Long,* with whom *Messrs. Charles S. Thomas, Malcolm Lindsey, George K. Thomas,* and *Peter Q. Nyce* were on the brief, for respondent.

312

314

Mr. Justice Sutherland delivered the opinion of the Court.

The disposition of this case depends upon the construction and application of § 2324, R. S. (U. S. C. Title 30, §28), and the effect upon its provisions of § 37 of the Mineral Leasing Act of February 25, 1920, c. 85, 41 Stat. 437, 451 (U. S. C. Title 30, § 193). Section 2324, R. S., which has its origin in § 5 of the Mining Act of 1872 (c. 152, 17 Stat. 91, 92), provides:

"On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. . . . and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location."

By § 2325, R. S. (U. S. C., Title 30, § 29), provision is made for issuing patents for claims located under the mining laws. One of the prerequisites, and the only one in respect of labor, is that the claimant must show "that $500 worth of labor has been expended or improvements made upon the claim by himself or grantors."

The Leasing Act of 1920 effected a complete change of policy in respect of the disposition of lands containing deposits of coal, phosphate, sodium, oil, oil shale, and gas. Such lands were no longer to be open to location and acquisition of title, but only to lease. But § 37 (U. S. C. Title 30, § 193) contains a saving clause protecting "valid claims existent at date of the passage of this Act and

thereafter maintained in compliance with the laws under which initiated," and declaring that they "may be perfected under such laws, including discovery."

On October 1, 1919, respondent and seven associates, all qualified under the law, located a tract of land in Garfield County, Colorado, under the name of Spad No. 3 placer claim. The land contained valuable deposits of oil shale and was open to appropriation under the mining laws of the United States. Spad No. 3 placer claim formed one of a group of six oil placer claims, numbered Spad No. 1, 2, 3, 4, 5 and 6 respectively, all located and owned by the same persons, and lying adjacent to each other. The assessment year 1920, by act of Congress, was extended until July 1, 1921. Prior to that date, annual labor amounting in value, it was asserted, to more than $600 was performed on claims numbered 4, 5 and 6, with the intention that said labor should apply to the entire group.

Subsequently, respondent acquired the interest of his co-locators in the Spad No. 3, and, during and for the assessment year 1921, performed thereon assessment labor of an admitted value of more than $100, and continued to perform labor and make improvements on the claim until the aggregate value exceeded $500. On September 25, 1922, he applied for a patent, and, having complied with the statutory requirements and paid the purchase price, obtained final receiver's receipt on December 16, 1922. No relocation of the claim was ever attempted, nor was the valid existence or maintenance of the claim ever challenged in anywise by the United States, or by anyone, prior to the issue of the receiver's receipt. Thereafter, a proceeding against the entry was instituted by the Commissioner of the General Land Office; and that officer, after consideration, held the claim null and void upon the sole ground of insufficient assessment labor for the year 1920. This holding was affirmed by the Secretary of the Interior.

In all the proceedings before the land officers and the Secretary, it was conceded, as it is here conceded, that the claim was valid and existent when the Leasing Act was passed; and that no reason existed, or now exists, for withholding a patent, save the alleged failure of assessment labor for the assessment year 1920. The Secretary held that by such failure, all rights to the claim became extinguished and could not be saved or revived by a resumption of work.

Thereupon, respondent applied by petition to the Supreme Court of the District of Columbia for a writ of mandamus to compel the Secretary to issue a patent to the claim. After a hearing on rule to show cause, that court discharged the rule and dismissed the petition. Upon appeal this judgment was reversed by the Court of Appeals for the District. 30 F. (2d) 742.

Two questions are presented for determination: (1) Did the Leasing Act of 1920 have the effect of extinguishing the right of the locator, under § 2324, to save his claim under the original location by resuming work after failure to perform annual assessment labor? (2) Is the case a proper one for the writ of mandamus?

1. The rule is established by innumerable decisions of this Court, and of state and lower federal courts, that when the location of a mining claim is perfected under the law, it has the effect of a grant by the United States of the right of present and exclusive possession. The claim is property in the fullest sense of that term; and may be sold, transferred, mortgaged, and inherited without infringing any right or title of the United States. The right of the owner is taxable by the state; and is "real property" subject to the lien of a judgmen recovered against the owner in a state or territorial court. *Belk* v. *Meagher,* 104 U. S. 279, 283; *Manuel* v. *Wulff,* 152 U. S. 505, 510-511; *Elder* v. *Wood,* 208 U. S. 226,

232; *Bradford* v. *Morrison,* .212 U. S. 389. The owner is not required to purchase the claim or secure patent from the United States; but so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent. While he is required to perform labor of the value of $100 annually, a failure to do so does not *ipso facto* forfeit the claim, but only renders it subject to loss by relocation. And the law is clear that no relocation can be made if work be resumed after default and before such relocation.

Prior to the passage of the Leasing Act, annual performance of labor was not necessary to preserve the possessory right, with all the incidents of ownership above stated, as against the United States, but only as against subsequent relocators. So far as the government was concerned, failure to do assessment work for any year was without effect. Whenever $500 worth of labor in the aggregate had been performed, other requirements aside, the owner became entitled to a patent, even though in some years annual assessment labor had been omitted. *P. Wolenberg et al.,* 29 L. D. 302, 304; *Nielson* v. *Champagne Mining & M. Co.,* 29 L. D. 491, 493.

It being conceded that the Spad No. 3 " was a valid claim existent on February 25, 1920," the only question is whether, within the terms of the excepting clause of § 37, the claim was " thereafter maintained in compliance with the laws under which initiated." These words are plain and explicit, and we have only to expound them according to their obvious and natural sense.

It is not doubted that a claim initiated under § 2324, R. S., could be maintained by the performance of annual assessment work of the value of .$100; and we think it is no less clear that after failure to do assessment work, the owner equally maintains his claim, within the meaning

of the Leasing Act, by a resumption of work, unless at least some form of challenge on behalf of the United States to the valid existence of the claim has intervened; for as this court said in *Belk* v. *Meagher, supra,* at page 283, " His rights after resumption were precisely what they would have been if no default [that is, no default in the doing of assessment labor] had occurred." Resumption of work by the owner, unlike a relocation by him, is an act not in derogation but in affirmance of the original location; and thereby the claim is " maintained " no less than it is by performance of the annual assessment labor. Such resumption does not *restore* a *lost* estate— see *Knutson* v. *Fredlund,* 56 Wash. 634, 639; it *preserves* an *existing* estate. We are of opinion that the Secretary's decision to the contrary violates the plain words of the excepting clause of the Leasing Act.

2. While the decisions of this Court exhibit a reluctance to direct a writ of mandamus against an executive officer, they recognize the duty to do so by settled principles of law in some cases. *Lane* v. *Hoglund,* 244 U. S. 174, 181, and cases cited. In *Roberts* v. *United States,* 176 U. S. 221, 231, referred to and quoted in the *Hoglund* case, this Court said:

" Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree,

a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, nor how plainly they violated their. duty in refusing to perform the act required."

See also *Ballinger* v. *Frost,* 216 U. S. 240, 250.

In this case, the Secretary interpreted and applied a statute in a way contrary to its explicit terms, and in so doing, departed from a plain official duty. A writ of mandamus should issue directing a disposal of the application for patent on its merits, unaffected by the temporary default in the performance of assessment labor for the assessment year 1920; and that further proceedings be in conformity with the views expressed in this opinion as to the proper interpretation and application of the excepting clause of the Leasing Act of February 25, 1920, and of § 2324, Revised Statutes of the United States. A writ in that form follows the precedent established by this Court in respect of the writ of injunction in *Payne* v. *Central Pac. Ry. Co.,* 255 U. S. 228, 238, and *Payne* v. *New Mexico,* 255 U. S. 367, 373, as being better suited to the occasion than that indicated by the District Court of Appeals. As so modified the judgment of that court is

*Affirmed.* .