**CONTINENTAL OIL COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 16130.

United States Court of Appeals
Fifth Circuit.

June 29, 1957.

James D. Voorhees, Denver, Colo., for petitioner.

Robert L. Russell, Willard W. Gatchell, Gen. Counsel F.P.C., William L. Ellis, E. B. Blackmon, Washington, D. C., for respondent.

Before BORAH, RIVES and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is a companion case to two cases we have decided today in Numbers 15,849—Deep South Oil Company of Texas v. Federal Power Commission, 247 F.2d 882, and 15,900—Shell Oil Company v. Federal Power Commission, 247 F.2d 900. Here, as in those cases, petitioner invokes the jurisdiction of this Court under Section 19(b) of the Natural Gas Act [1] and seeks to have set aside an order of the Federal Power Commission which, among other things, determined that petitioner is a "natural-gas company" subject to the jurisdiction of the Commission. The basic contentions and the grounds asserted for setting aside the order are in essence identical to those urged by petitioners in the two companion cases, supra. However, in addition this case raises other questions not presented in the Deep South and Shell cases and a review of the pertinent facts is necessary to properly dispose of those issues.

Petitioner, Continental Oil Company, is an integrated oil company and its principal business is exploring for, producing, transporting, refining and marketing crude oil and liquid petroleum products. In addition, petitioner also engages in producing, gathering, processing and selling natural gas, but is not

1. 15 U.S.C.A. § 717r(b).

engaged either directly or indirectly in the operation of any interstate gas pipeline. The petitioner owns an undivided one-half interest in two oil and gas leases in Park County, Wyoming and these interests are committed to a Unit Agreement for the Development and Operation of the South Elk Basin Unit Area. Three gas wells have been completed in this area and they are operated by petitioner under the terms of the unit agreement. The "dry" or "gas well gas" produced from the Cloverly-Morrison group of sandstones underlying these wells is sold to Montana-Dakota Utilities Company pursuant to a gas purchase contract, dated January 23, 1951, between petitioner and the other owners of interests in the leases, as sellers, and Billings Gas Co., assignor of Montana-Dakota, as buyer. The contract recites that the buyer "is now operating a gas pipe line from the vicinity of the above lands to points in Wyoming and Montana," and provides, among other things, that the Cloverly-Morrison reserves of gas underlying the leases owned by sellers are "dedicated" to its performance and that the points of delivery thereunder shall be at the gas outlets of the sellers' separators. Prior to delivery under the contract, the gas from each well flows through the wellhead into a heater and separator (which is located on the lease in close proximity to the well) where the free water and gas condensate are removed. Thereafter, the gas passes through the outlet valves of the three separators into the Montana-Dakota pipeline and upon delivery at these points title to the gas passes to the buyer and petitioner has no further ownership or control of, or interest in the gas sold. The gas is then transported in the buyer's field pipeline system to a central point where it is metered and dehydrated,[2] following which the gas travels approximately six to eight miles to Montana-Dakota's compressor station which is located in Wyoming about a mile south of the Wyoming-Montana state line. The gas upon reaching the compressor station is there commingled with gas produced by other producers in the area, and thereafter, during the greater part of the year, the gas moves directly into the interstate transmission line and thence into the State of Montana. At certain times of the year, however, and for the purpose of balancing its pipeline load factors, Montana-Dakota, diverts temporarily a portion of the gas which it transports into an underground storage facility, which lies across the state line and reaches into both Montana and Wyoming, where it is merged with other gas and then moves on into the interstate transmission line for sale to ultimate consumers.[3]

On or about November 30, 1954, pursuant to the Commission's Order No. 174-A,[4] petitioner filed under protest an application for a certificate of public convenience and necessity covering the aforementioned sales of gas from the three wells here involved.[5] Concurrently with the filing of this application, petitioner also filed, under Section 1.7(c) of the Commission's Rules of Practice and Procedure, a petition for a declaratory order in which it sought to have the Commission declare that its sales to

2. A glycol dehydrator employed for this purpose removes small particles of water called "mist" which may not have been previously removed by the separators. This prevents water collecting in low points downstream between the dehydrator and the compressor station.

3. In the petition for review, there is no claim that the storage of some part of the gas incident to the transportation would affect the continuous interstate journey from the beginning.

4. See Magnolia Petroleum Company v.

Federal Power Commission, 5 Cir., 236 F.2d 785, certiorari denied 352 U.S. 968, 77 S.Ct. 356, 1 L.Ed.2d 322, for a discussion of Order No. 174-A.

5. At the same time petitioner filed as a "rate schedule" the gas purchase contract dated January 23, 1951, and a change in rate schedule reflecting application of the "favored nations" clause of the contract. But the Commission assigned the issues presented in these filings to another docket and they are not involved in this case.

Montana-Dakota are not subject to the Commission's jurisdiction. The proceeding on petitioner's application for certificates of public convenience and necessity was consolidated with the petition for a declaratory order, and the consolidated proceedings came on for a hearing before a presiding examiner.[6]

At the hearing, petitioner introduced full and complete evidence of the facts relating to its production of natural gas and sale thereof to Montana-Dakota at the separator outlets, but declined to present evidence concerning the ultimate destination of such gas after it enters the buyer's lines. Whereupon the presiding examiner sought the cooperation of all parties and asked for specific data and proofs to show the further and final disposition of the gas made by the buyer in order that he might make a final decision on the issues pending for determination. Upon Continental's failure to come forward with such evidence, staff counsel asked the examiner to take official notice of certain public records and orders of the Commission pertaining to the ultimate destination of the gas purchased by Montana-Dakota. These orders, which are contained in the published reports of the Commission, are as follows: Order finding Montana-Dakota to be a "natural-gas company" under the Natural Gas Act, issued April 6, 1943, Docket G-282, 3 F.P.C. 968; Order authorizing Montana-Dakota to acquire the facilities used to transport gas produced from the South Elk Basin Unit Area from Billings Gas Company [the original purchaser under petitioner's gas sales contract dated January 23, 1951] and to operate them in the transportation and sale of natural gas for resale in interstate commerce, subject to the jurisdiction of the Commission issued May 23, 1951, Docket Nos. G-1610 and G-1611, 10 F.P.C. 1002; and Order authorizing the replacement and enlargement of some of Montana-Dakota's Bill-

ings Division facilities, issued November 29, 1951, Docket Nos. G-1610 and G-1611, 10 F.P.C. 1575. The examiner, without objection by petitioner, took official notice of these documents, and also received the testimony of the Assistant Chief of the Commission's Bureau of Rates and Certificates to explain, by analysis of the official records relating to Montana-Dakota, the disposition made and to be made by it of the gas purchased from petitioner. In addition, the examiner received in evidence, over petitioner's objection, certain documentary evidence from the Commission's files to which the aforementioned witness's testimony referred. Upon consideration of all of the evidence there adduced the presiding examiner found that petitioner's sales and deliveries of gas into the integrated interstate pipeline system of Montana-Dakota, a company already having been found by the Commission to be a "natural-gas company" under the Act, were sales of natural gas in interstate commerce for resale and subject to the provisions of the Natural Gas Act. Therefore, it was ordered, subject to review by the Commission, that a certificate of public convenience and necessity be issued to petitioner authorizing the continuation of such sales of natural gas to Montana-Dakota and that the petition for declaratory order be denied.

Thereafter, petitioner's exceptions to the decision of the presiding examiner were argued before the Commission and by order issued on February 6, 1956, the examiner's decision was affirmed. In its opinion the Commission specifically affirmed the action of the examiner in taking official notice of its prior orders and with reference thereto stated:

"We have issued no order permitting discontinuance of that authorized operation [by Montana-Dakota], and Continental has pre-

6. A number of other parties, co-owners with Continental and participants in the same sales, filed similar applications, all of which were consolidated, but only

Continental has sought judicial review of the order issued in the consolidated proceeding before the Commission.

sented no evidence to rebut the presumption of continuing jurisdiction. * * * A sale of gas to a natural-gas company which has been found to be operating its facilities subject to the jurisdiction of the Commission is presumptively a sale subject to the jurisdiction of the Commission. The burden is upon one asserting nonjurisdiction to adduce evidence upon which such conclusion could reasonably be based. This, however, Continental has not sustained. The sale of natural gas by Continental * * * is a sale for resale in interstate commerce subject to the jurisdiction of this Commission. Phillips Petroleum Co. v. [State of] Wisconsin, 347 U.S. 672 [74 S.Ct. 794, 98 L.Ed. 1035]. See our Opinion and Order In the Matter of Deep South Oil Company, Docket No. G-2952 et al., Opinion No. 284, issued September 9, 1955."

And by its order the Commission approved the issuance of a certificate of public convenience and necessity to petitioner authorizing the sales of gas to Montana-Dakota "together with the operation of any facilities used for the sale or transmission of natural gas in interstate commerce subject to the jurisdiction of the Commission," and denied petitioner's application for an order declaring that its sales are not subject to the Commission's jurisdiction under the Natural Gas Act. Upon petitioner's application for a rehearing, the Commission adhered to its former decision and a rehearing was denied. Whereupon petitioner filed the within petition for review.

■ Petitioner's primary contention here is that its sales to Montana-Dakota are not sales of natural gas in interstate commerce for resale for the reason that the gas sold at the wellhead is not committed on its interstate journey until some point after the sale takes place. We have carefully considered all of the arguments made by petitioner in support of this contention and are of the

clear opinion that the Commission was right for the reasons which it gave. Petitioner does not here deny the truth of the facts as found by the Commission and it failed to offer any evidence to show that its gas is not destined for ultimate public consumption in other states when the sales in question are effected. Furthermore, in its application for rehearing before the Commission, petitioner stated that "Continental does not deny that the gas may ultimately be placed in interstate commerce or transmitted to an out-of-state destination, but contended only that such fact was "immaterial" to the resolution of the question whether or not its sales to Montana-Dakota are sales "in interstate commerce." Moreover, and despite the slight factual differences in the operations of petitioner and Deep South and Shell, there exists in the instant case the identical legal principles involved in the above-cited companion cases this day decided. Accordingly, and for the reasons there stated at length we conclude that the Commission properly determined that the sales here involved are sales of natural gas in interstate commerce for resale and that petitioner is therefore a "natural-gas company" subject to the jurisdiction of the Commission.

With reference to the issuance of the certificate of public convenience and necessity, petitioner contends that the Commission erred in failing to designate the "facilities" operated by petitioner over which the Commission asserts jurisdiction. For answer we deem it sufficient to say that we have carefully examined the record and find that the only objection raised by petitioner before the Commission was that the examiner's finding as to jurisdictional facilities is "immaterial" and that the certificate for the facilities is improper and not required for the reason that it represents an assertion of power denied to the Commission by Congress. Consequently, it appears that this assignment of errors as posed by petitioner on review is not properly before us, for under Section

19(b) of the Natural Gas Act,[7] we may not consider any objections not urged before the Commission in an application for rehearing. What we have just said is equally applicable to numerous other assignments in brief which were not previously presented to the Commission in petitioner's application for rehearing.

Affirmed.

BROWN, Circuit Judge.

I dissent for reasons hereafter to be filed. For dissenting opinion see 247 F.2d 889.

---

**7.** Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), provides in part that "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."