**LOUISIANA POWER & LIGHT COMPANY, Petitioner,**

**v.**

**FEDERAL POWER COMMISSION, Respondent.**

**No. 75–3429.**

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1977.

[redacted]

[redacted]

[redacted]

[redacted]

Andrew P. Carter, H. Sloan McCloskey, William T. Tete, New Orleans, La., for petitioner.

Drexel D. Journey, Gen. Council, Allan Abbot Tuttle, Sol., John J. Lahey Atty., FPC, Washington, D. C., for respondent.

Harry E. Barsh, Jr., Washington, D. C., for intervenor State of Louisiana.

William B. Cassin, Gen. Counsel, Phillip D. Endom, Associate Gen. Counsel, Houston, Tex., W. DeVier Pierson, Ross Hamachek, Peter J. Levin and Richard A. Yarmey, Washington, D. C., for intervenor United Gas Pipeline Co.

Platt W. Davis, Washington, D. C., and Jack D. Head, Houston, Tex., for intervenor Texas Eastern Transmission Corp.

Edward J. Grenier, Jr., and Floyd I. Robinson, Jr., Washington, D. C., for intervenor General Motors Corp.

Before CLARK, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Louisiana Power & Light Company (LP&L), a customer of United Gas Pipe Line Company, seeks review of a Federal Power Commission order denying LP&L's request that the Commission file an Environmental Impact Statement (EIS) for an "interim" natural gas curtailment plan in effect on the system of United. Although LP&L followed the correct procedure in its attempt to require the Commission to comply with the dictates of the National Environmental Policy Act (NEPA), 42 U.S.C.A. § 4331 *et seq.*, we dismiss the petition for review on the ground that LP&L has failed to demonstrate that the filing of an impact statement is required now under the rule of reason announced in *State of Louisiana v.*

*FPC*, 503 F.2d 844, 877 (5th Cir. 1974). We deny the assertion of the Commission that the petition was untimely.

■ By this decision, we emphasize that our prior decisions did not establish a *per se* rule eliminating the necessity of filing an impact statement for a curtailment plan merely because it is labeled as "interim," and reemphasize that the Commission must make a good faith effort to describe the reasonably foreseeable environmental impact of each curtailment plan it invokes in every case in which that responsibility does not conflict with its statutory duties under the Natural Gas Act. 15 U.S.C.A. § 717 *et seq.*

### Procedural Background

The background of the proceedings for implementation of a curtailment plan on United's system is set forth at length in *State of Louisiana v. FPC*, 503 F.2d 844 (5th Cir. 1974), *Louisiana Power & Light Co. v. FPC*, 526 F.2d 898 (5th Cir. 1976), and *Southern Natural Gas Co. v. FPC*, 547 F.2d 826 (5th Cir. 1977). Briefly, however, we review the facts preceding the instant petition for review.

Since 1970, a series of curtailment plans have been in effect on the system of United. From November 1, 1970 through March 31, 1971, a three-priority plan was implemented, followed by another three-priority plan from April 1, 1971 through October 31, 1971. Pursuant to FPC Order No. 431, which required all pipe line companies anticipating a natural gas shortage to file a proposed curtailment plan with the Commission, United initially proposed a five-priority plan. This proposal was rejected and reduced to a four-priority plan, which remained in effect from November 1, 1971 through January 12, 1973, when the Commission issued its Opinion No. 647. In its opinion, the Commission set forth a new five-priority plan for ultimate implementation and ordered immediate effectuation of a three-priority plan in the interim. Opinion No. 647 was the subject of this Court's decision in *State of Louisiana, supra*, in which we held that the FPC was without

statutory authority to require the implementation of a new three-priority plan without a finding that the existing plan was unjust and unreasonable, but we allowed curtailment under the three-priority plan pending such determination.

Subsequently, on March 7, 1975, in response to this Court's mandate, the FPC issued an order concluding that United's four-priority plan had become unjust and unreasonable after Opinion No. 647 was rendered and that the three-priority plan was warranted pending adoption of a permanent plan. The Commission also provided for further hearings denominated Phases I and II. In Phase I the Commission was to hold hearings to determine whether the three-priority plan should remain in effect pending formulation of a permanent plan, and in Phase II the Commission was to continue the ongoing hearings on a permanent plan. The Commission ordered preparation of an EIS on the permanent curtailment plan, but decided that because the three-priority plan was "interim," no EIS was required.

Several parties, including LP&L, one of United's customers, petitioned for rehearing, but did not attack the FPC's decision not to require an EIS for the three-priority plan. The FPC denied all petitions except that of United on May 2, 1975. On May 6, 1975, LP&L and several other parties petitioned this Court for review of the orders of March 7 and May 2, 1975. This Court revised and remanded the orders for further proceedings in *Louisiana Power & Light Co. v. FPC*, 526 F.2d 898 (5th Cir. 1976).

### Motion to Require Environmental Impact Statement

On May 6, 1975, LP&L filed with the Commission a motion to require the filing of an EIS with respect to the "interim" curtailment plan. The FPC, on June 11, 1975, denied LP&L's motion stating that, because of the substantial delays that would result, the Commission would be violating its statutory duty to take prompt action to complete Phase I. Subsequently, LP&L applied for rehearing, but on August

7, 1975, its petition was denied, based on the Commission's finding that the three-priority plan was interim, for which an EIS is not required.

On September 10, 1975, LP&L petitioned this Court for review of the June 11 and August 7, 1975 orders.

### Timeliness of Petition for Review

At the outset, the FPC filed a motion to dismiss the petition and now contends that LP&L makes an untimely collateral attack on the March 7, 1975 order.

Section 19(a) of the Natural Gas Act, 15 U.S.C.A. § 717r(a), provides as follows for filing an application for rehearing:

(a) Any person . . . aggrieved by an order issued by the Commission . . may apply for a rehearing within thirty days after the issuance of such order. . . . No proceeding to review any order . . . shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. . . .

The Rules of Practice and Procedure of the Federal Power Commission, 18 C.F.R. § 1.34(a) (1976), set forth a similar thirty-day period for the filing of petitions for rehearing. Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), limits review by the court of appeals of Commission orders to those objections that were raised before the Commission in the application for rehearing, "unless there is reasonable ground for failure so to do." *See Continental Oil Co. v. FPC*, 247 F.2d 904, 907–908 (5th Cir. 1957); *Skelly Oil Co. v. FPC*, 401 F.2d 726, 729 (10th Cir. 1968).

The Commission argues that, when LP&L chose not to seek a rehearing of the Commission's March 7, 1975 decision on the EIS within the required statutory time, it forfeited its right to attack that decision thereafter.

This position misconstrues the requirements of NEPA. In *State of Louisiana v. FPC*, 503 F.2d 844 (5th Cir. 1974), this Court held the Commission need not file an EIS in connection with a curtailment plan that is truly "interim" in nature, designed and pro-

mulgated to meet the exigencies presented by the diminishing natural gas supply. This principle derives solely from the hypothesis that to require the Commission's compliance with NEPA would be to require the Commission's abrogation of its duties under the Natural Gas Act. Thus, labeling a curtailment plan as "interim" or "permanent" would not in itself determine whether NEPA required the filing of an EIS for that plan. Once it can be shown that the Commission can both comply with NEPA and execute its statutory responsibility to curtail natural gas consumption with the expediency that the public interest demands, then the Commission has a clear responsibility to examine the environmental implications of its action through the formal process which NEPA prescribes.

It becomes apparent that the intended or actual duration of a nominally "interim" curtailment plan is of only tangential relevance. The dispositive question will always be whether the Commission can comply with NEPA and at the same time discharge its responsibilities under the Act. Changed circumstances which eliminate the conflict between the Commission's statutory duties and the dictates of NEPA would require the Commission to undertake a full-scale NEPA assessment of its actions. If the Commission fails to undertake such an assessment, any party with the proper standing can petition the Commission to comply with its NEPA duties. A refusal to do so, and denial of a petition for rehearing, could then be reviewed by this Court.

The Commission may not use section 19 as a device to avoid the mandates of NEPA by continuing to implement a curtailment plan, nominally "interim," without filing an EIS, if possible to do so. As a caveat to *State of Louisiana v. FPC, supra*, which required the filing of an impact statement as a prerequisite to a permanent curtailment plan, we stated:

[i]t should be understood, however, that our ruling today is not a license for permanent or prolonged evasion of responsibilities under NEPA. If it becomes clear

**1126**

that the Commission's non-compliance is attributable to motives *other than statutory impossibility*, interested parties will not be barred by this opinion from seeking appropriate relief.

503 F.2d at 875 (emphasis in original), *quoting American Smelting & Refining Co. v. FPC*, 494 F.2d 925, 949 n. 47 (D.C.Cir. 1974). The proper test is whether compliance with the dictates of NEPA would give rise to a violation of the Commission's statutory responsibilities under the Natural Gas Act, irrespective of the label attached to the plan. Where the exigencies presented by the natural gas shortage call for prompt action by the Commission in implementing effective interim curtailment, NEPA does not suspend this duty while an EIS is prepared and filed. *Atlanta Gas Light Co. v. FPC*, 476 F.2d 142, 150 (5th Cir. 1973).

In this case, LP&L followed the proper procedure in requesting the Commission to file an EIS. The refusal and subsequent denial of a petition for rehearing in its June 11 and August 7, 1975 orders furnished the section 19 jurisdictional basis for a petition for review in this Court.

### Merits of Petition

■ The record does not demonstrate that by May 6, 1975, when LP&L filed its motion with the Commission, however, circumstances had so changed as to render the original reasons for not complying with NEPA invalid: (1) the Commission implemented this temporary plan to protect the public interest until completion of Phase II, (2) preparation of an EIS would only serve to delay the Phase II hearings on a permanent plan, and (3) the Commission was attempting to comply with this Court's mandate to proceed with these hearings as rapidly as possible.

LP&L presented the issue in its brief as follows: whether the FPC may avoid the requirement of filing an adequate Environmental Impact Statement by continuing indefinitely a curtailment program which is termed interim, but which is in effect permanent. The answer to this issue is in the negative, but LP&L has failed to convince

us that the FPC has conducted itself as alleged in the stated issue.

The petition for review is

DISMISSED.