**STATE OF SOUTH DAKOTA**

v.

**Cecil D. ANDRUS, Secretary of U. S. Department of Interior, et al.**

**No. CIV 77–5058.**

United States District Court, D. South Dakota.

Dec. 26, 1978.

Lawrence Kyte, Asst. Atty. Gen., State of South Dakota, Pierre, S. D., for plaintiff.

Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D., Horace Jackson, Rapid City, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiff seeks both injunctive and declaratory relief thereby requesting this Court to determine that an environmental impact statement (hereinafter an EIS) must be prepared before defendant Pittsburgh Pacific Company can be granted the mineral patent to twelve twenty-acre mining claims located within the Black Hills National Forest, Lawrence County, South Dakota. Pittsburgh Pacific Company's application for a patent for these claims was contested by the Bureau of Land Management at the request of the United States Forest Service. After the trial of this contest, the administrative law judge entered a decision denying the contest and affirmatively finding Pittsburgh Pacific Company to be entitled to a mineral patent for the twelve mineral claims. The Bureau of Land Management, at the request of the Forest Service, appealed that decision to the United States Department of Interior, Interior Board of Land Appeals. At that stage the State of South Dakota filed an *amicus curiae* brief arguing *inter alia,* that the Secretary must prepare an EIS before a mineral patent could be issued. The Board determined that no EIS need be prepared prior to the issuance of a mineral patent for these claims. *United States v. Pittsburgh Pacific Company,* 30 IBLA 388 (1977). The Board, however, did set aside the decision of the administrative law judge for different reasons and remanded the case for further hearings in the matter.

Subsequent to these proceedings, the State of South Dakota commenced this suit seeking to compel the preparation of an EIS for the claims in question prior to the issuance of a mineral patent. Both the federal defendants and Pittsburgh Pacific Company have moved to dismiss plaintiff's complaint. The defendants contend that the Secretary of the Interior has no discretion in granting a mineral patent. Consequently, they argue, an applicant is entitled to a mineral patent after having demonstrated compliance with the specific statutory prerequisites. As the Secretary has no discretion beyond assuring compliance with these prerequisites, defendants contend that any EIS would be of minimal value. Fur-

thermore, defendants contend that the granting of a mineral patent is not a "major federal action" which will significantly affect the quality of the human environment within the meaning of 42 U.S.C. § 4332(C).

It has been accepted that the initial determination concerning the applicability of NEPA to a particular federal action rests with the federal agency involved. *Minnesota Public Interest Research Group v. Butz,* 498 F.2d 1314, 1319 (8th Cir. 1974). The standard of review to be employed by a Court in evaluating an agency's determination not to prepare an EIS has been articulated by the Eighth Circuit Court of Appeals as follows:

> We therefore hold that review of an agency's determination not to prepare an impact statement should be measured by its reasonableness in the circumstances . . . .. *Minnesota Public Interest Research Group v. Butz,* 498 F.2d 1314, 1320 (8th Cir. 1974).

This Court will employ this standard in reviewing the agency's decision.

An analysis of the Secretary's duties in acting upon a mineral patent application is essential to a review of the agency's decision not to file an EIS. The description of the nondiscretionary function of the Secretary in acting upon an application for a mineral patent contained in 2 *The American Law of Mining* at § 9.04 (pages 284–285) illuminates the type of property interest which is conveyed to the recipient of a mineral patent under the applicable mining laws, *i. e.* 30 U.S.C. § 29 *et seq.* The pertinent portions of that section read as follows:

> It has been contended, unsuccessfully, that the granting of a mineral patent is a matter which is "by law committed to agency discretion." This view fails to recognize the fundamental distinction between the mining laws and the mineral leasing laws. Under the mineral leasing laws the Secretary may, in his discretion, refuse to issue any lease or prospecting permit at all on a given tract. *The locator of a mining claim, however, holds his claim by virtue of an Act of Congress. Upon compliance with the requirements of the mining laws, he is entitled to a patent, and the Secretary has no discretion to deny an application for a mineral patent where all the requirements of law have been met.* Thus, in the mining laws, Congress chose a method of disposing of public lands whereby the recipient of the grant had only to prove that he met the requirements of the law in order to have the *rights he obtained by location confirmed by patent.* The power confided by the Secretary with respect to the issuance of mineral patents is not that of granting or denying a privilege but of determining whether an existing privilege conferred by Congress has been lawfully exercised. The distinction between the power of the Secretary to issue a mineral patent and his power to issue a mineral lease or permit is the distinction between a positive mandate to the Secretary and permission to take certain action in his discretion. Nevertheless, the Secretary is not authorized to issue a patent until he is satisfied that the requirements of the law have been complied with. . . .

> A patent will not be issued unless, at the time of the patent application, the claim is valuable for minerals, and there exists, within the limits of the claim, a valid discovery. (Emphasis added.)

See also 2 *The American Law of Mining,* § 6.7. The case of *Wilbur v. United States ex rel. Krushnic,* 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930) is an early United States Supreme Court decision which involved the issuance of a writ of mandamus by the United States Supreme Court to the Secretary of the Interior ordering the Secretary to confer a mineral patent to a particular claimant after that claimant had successfully demonstrated compliance with the statutory prerequisites for a mineral patent. This case stands for the proposition that the issuance of a mineral patent by the Secretary is a nondiscretionary action.

In determining that it was not necessary for the Government to prepare an EIS be-

fore issuing a patent to a mining claim in the case of *United States v. Kosanke Sand Corp.,* 12 IBLA 282, 290–291 (1973), the Interior Board of Land Appeals made these observations:

Upon satisfaction of the requirements of the statute, the holder of a valid mining claim has an absolute right to a patent from the United States conveying fee title to the land within the claim, and the actions taken by the Secretary of the Interior in processing an application for patent by such claimant are not discretionary; issuance of a patent can be compelled by court order. *Wilbur v. Krushnic, supra,* 280 U.S. at 318–19 [50 S.Ct. 103, 74 L.Ed. 445]; *Roberts v. United States,* 176 U.S. 221, 231 [20 S.Ct. 376, 44 L.Ed. 443] (1900). The patent may contain no conditions not authorized by law. *Deffeback v. Hawke,* 115 U.S. 392, 406 [6 S.Ct. 95, 29 L.Ed. 423] (1885). The claimant need not, however, apply for patent to preserve his property right in the claim, but may if he chooses continue to extract and freely dispose of the locatable minerals until the claim is exhausted, without ever having acquired full legal title to the land. *Union City Oil Co. v. Smith,* 249 U.S. 337, 348–49 [39 S.Ct. 308, 63 L.Ed. 635] (1919); *United States v. Carlile,* 67 I.D. 417, 421 (1960). The patent, if issued, conveys fee simple title to the land within the claim, but does nothing to enlarge or diminish the claimant's right to its locatable mineral resources.

The State urges this Court to reevaluate the characterization of the Secretary's function in acting upon a mineral patent application as nondiscretionary. This Court finds that the existing and controlling case law clearly establishes that such actions are nondiscretionary. As the relevant mining law has not changed in any way which would allow this Court to distinguish or ignore the controlling law, this Court must accept the established precedent that the Secretary's actions in processing a mineral patent application are nondiscretionary. Consequently, the issue before this Court is whether the National Environmental Protection Act (hereinafter NEPA) applies to

the performance of a nondiscretionary function and, furthermore, whether the performance of this particular nondiscretionary function qualifies as a major federal action significantly affecting the environment to which the requirements of NEPA apply.

The relevant statute, 42 U.S.C. § 4332, provides, in pertinent part that:

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

(C) include in every recommendation or report on proposals for legislation and *other major Federal actions significantly affecting the quality of the human environment,* a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented. (Emphasis added.)

The statutory language itself and the case law interpreting it reveals that the requirements of an environmental impact statement were developed to aid federal agencies in their *decision-making* processes. As the Court observed in *Calvert Cliffs' Coordinating Comm. v. A. E. C.,* 146 U.S.App. D.C. 33, 38, 449 F.2d 1109, 1114 (1971):

*The apparent purpose of the "detailed statement" is to aid in the agencies' own*

*decision making process and to advise other interested agencies and the public of the environmental consequences of planned federal action.* Beyond the "detailed statement," Section 102(2)(D) requires all agencies specifically to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." *This requirement, like the "detailed statement" requirement, seeks to ensure that each agency decision maker has before him and takes into proper account all possible approaches to a particular project* (including total abandonment of the project) *which would alter the environmental impact and the cost-benefit balance. Only in that fashion is it likely that the most intelligent, optimally beneficial decision will ultimately be made.* Moreover, by compelling a formal "detailed statement" and a description of alternatives, NEPA provides evidence that the mandated decision making process has in fact taken place and, most importantly, allows those removed from the initial process to evaluate and balance the factors on their own. (Emphasis added.)

Similar assumptions concerning the expectation that the environmental impact statements prepared by the particular federal agency will affect and influence that agency's decision-making process are found in other cases. For example, in commenting upon the requirements of NEPA in *Environmental Defense Fund v. Corps of Eng., U. S. Army,* 470 F.2d 289, 294 (8th Cir. 1972), the Eighth Circuit Court of Appeals observed:

> Thus the Act requires all administrative agencies of the federal government in the process of project development and decisionmaking to consider the environmental impact of their actions. 115 Cong.Rec. (Part 30) 40416 (1969).

See also *Iowa Citizens For Environmental Quality, Inc. v. Volpe,* 487 F.2d 849, 851 (8th Cir. 1973).

In evaluating a mineral patent application, the Secretary is hardly involved in a federal project or decision-making which can legally be influenced by the information which an EIS would disclose. The Secretary is merely acting upon a private party's assertion of fee simple title to particular mineral claims. Furthermore, in the process of so acting, the Secretary is not permitted to consider environmental factors other than the costs of complying with environmental laws and regulations as such costs bear upon the question of the potential profitability of the mining project, and hence the inherent value of that claim. This Court finds that the nature of the property interest conveyed by our mining laws to a claimant which is confirmed by a patent and the Secretary's nondiscretionary actions in processing a mineral patent application are not compatible with requiring the preparation of an EIS before a mineral patent can issue.

The Eighth Circuit has adopted a unitary standard for evaluating whether a particular federal action is a major federal action significantly affecting the quality of the human environment. That court has stated:

> By bifurcating the statutory language, it would be possible to speak of a 'minor federal action significantly affecting the quality of the human environment,' and to hold NEPA inapplicable to such an action. Yet if the action has a significant effect, it is the intent of NEPA that it should be the subject of the detailed consideration mandated by NEPA; the activities of federal agencies cannot be isolated from their impact upon the environment. *Minnesota Public Interest Research Group v. Butz, supra,* at 1321–22.

This unitary approach will therefore be followed.

NEPA has been held to apply to situations where the actions taken by the federal agency are relatively minor but form the basis for enabling the private parties to act. As the Ninth Circuit Court of Appeals stated in *National Forest Preservation Group v. Butz,* 485 F.2d 408, 411–412 (9th Cir. 1973):

While the federal defendants are not themselves planning to take action 'significantly affecting the quality of the human environment,' 42 U.S.C. § 4332(c), the private defendants plan such action, and the exchange is an act without which such action could not be taken. The land exchange is thus analogous to the licensing of or granting of federal funds to a nonfederal entity to enable it to act. Such federal 'enablement' has consistently been held to be subject to NEPA. As the federal defendants involved are not planning to undertake any mining operation themselves, the issue is whether the Secretary's granting of a mineral patent application is the necessary step which enables the private parties to commence their mining operations and consequently a major federal action significantly affecting the quality of the human environment under the "enablement" analysis.

Unlike the cases where a federal license, permit, or lease is required before the private party can begin the particular project in question, the locator of a mining claim may begin his mining operation without a mineral patent. As the United States Supreme Court stated in *Union Oil Co. of California v. Smith,* 249 U.S. 337, 39 S.Ct. 308, 311, 63 L.Ed. 635 (1919):

[A] discovery of mineral by a qualified locator upon unappropriated public land initiates rights much more substantial as against the United States and all the world. If he locates, marks, and records his claim in accordance with section 2324 and the pertinent local laws and regulations, he has, by the terms of section 2322, an exclusive right of possession to the extent of his claim as located, *with the right to extract the minerals,* even to exhaustion, without paying any royalty to the United States as owner, and *without ever applying for a patent* or seeking to obtain title to the fee . . . . (Emphasis added.)

(Also see additional sources cited earlier in this Memorandum Opinion.)

In the case of *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 436 F.Supp. 1194, 1200–1201 (U.S.D.C., D.Del.1977) the court held that an EIS need not be filed in conjunction with the project in question. We agree with the distinction drawn by that court:

When federal agencies issue permits which are required to engage in activities with environmental consequences, such as operating a nuclear power facility, environmental impact statements frequently must be prepared before the permits can be granted. However, the typical permit case involves a private activity which cannot be carried on without federal permission. . . . No similar federal restriction prohibits the WMC from building and operating a new suburban hospital . . . even if it had ignored the § 1122 procedures available to it.

Furthermore, in the typical permit case, the federal agency has discretionary powers to exercise. . . .

In the instant case, the receipt of a patent from the federal government is not a condition precedent to the commencement of mining activities. Plaintiff argues strenuously that this Court should consider the difficulty which the private defendants will have in obtaining financing without a patent for their claims. This practical consideration is not controlling where the legal rights of the locator are clear. While the mineral patent would be of considerable value to the claimant, it is not a necessity for the claimant to have a mineral patent before beginning to extract minerals and, concomitantly, affect the quality of the human environment.

Under these circumstances, this Court cannot find that the initial agency decision not to prepare an environmental impact statement was unreasonable. In acting upon a mineral patent application, the agency is involved in a nondiscretionary activity of evaluating a property interest which does not permit the consideration of environmental factors. Any EIS would therefore be of minimal value. Furthermore, as a claimant can begin to extract minerals without a mineral patent, the granting of a mineral patent is not a major

federal action significantly affecting the quality of the human environment.

This Court's decision upon the requirements of the law should not be construed as demonstrating an indifference to the environment. This Court is concerned about the environment and, particularly, about the future of the area for which the mineral patent is sought. The existing mineral patent laws need to be altered so that the legitimate environmental concerns of the people of the State of South Dakota and other interested persons are given a vital role in the mineral patenting process.

For the reasons set forth in this Memorandum Opinion, Defendants' motions to dismiss will be granted.