614 F.2d 1190
 14 ERC 1166, 10 Envtl. L. Rep. 20,181
 STATE OF SOUTH DAKOTA, Appellant,
v.
Cecil D. ANDRUS, as Secretary of United States Department of
Interior; Joseph W. Goss, Anne Poindexter Lewis, and Martin
Ritvo, as Administrative Judges of the United States
Department of Interior, Interior Board of Land Appeals;
George L. Turcott, as Acting Director of the United States
Department of Interior, Bureau of Land Management; the
United States Department of Interior; and Pittsburgh Pacific
Company, Appellees.
 No. 79-1178.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1979.
Decided Feb. 12, 1980.
 
 Lawrence W. Kyte, Asst. Atty. Gen., Pierre, S. D., for appellant; Mark V. Meierhenry, Atty. Gen., and Roxanne Giedd, Asst. Atty. Gen., Pierre, S. D., on the brief.
 Paula C. Phillips, Denver, Colo., for amicus curiae, Environmental Defense Fund, George W. Pring, Denver, Colo., on the brief.
 Carl Strass, Atty., Dept. of Justice, Washington, D. C., for appellee, Federal; James W. Moorman, Asst. Atty. Gen., Washington, D. C., Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D., Dirk D. Snel, Gerald S. Fish, Attys., Washington, D. C., on the brief.
 Horace R. Jackson, Lynn, Jackson, Shultz & Lebrun, Rapid City, S. D., for appellee, Pittsburgh Pac. Co.
 Mary Jane C. Due, Washington, D. C., filed brief for amicus curiae American Mining Congress.
 Jeff Masten and Sam W. Masten, Canton, S. D., filed brief amicus curiae.
 Before BRIGHT and HENLEY, Circuit Judges, and REGAN, Senior District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered by The Honorable Andrew W. Bogue of the United States District Court for the District of South Dakota dismissing the State of South Dakota's suit in which the State sought declaratory and injunctive relief to compel the United States Department of Interior to prepare an Environmental Impact Statement (EIS) prior to its issuance of a mineral patent to the Pittsburgh Pacific Company (Pittsburgh). On appeal the State contends that the district court erred and asks us to reverse and remand this case for a trial on the merits. After careful review of the district court's judgment, we affirm.
 
 
 2
 * Pittsburgh filed an application under the General Mining Act of 1872, 30 U.S.C. § 21 et seq., for a mineral patent to twelve contiguous twenty acre mining claims located within the Black Hills National Forest in Lawrence County, South Dakota. Pittsburgh claimed discovery of some 160 million tons of relatively low grade iron ore and sought a mineral patent covering the discovery lands. Pittsburgh proposed to mine 96 million tons of the ore through open pit mining at an annual rate of approximately seven million long tons a year. The general plan of operation also included processing the best of this ore into hard pellets as well as loading these pellets into railroad cars for shipping.
 
 
 3
 In 1971, however, Pittsburgh's application for a mineral patent was contested, at the request of the United States Forest Service, by the Bureau of Land Management. The Bureau contended that Pittsburgh had not discovered a valuable mineral deposit under the 1872 Mining Act. The Administrative Law Judge nonetheless dismissed the complaint and approved the mineral patent.
 
 
 4
 The Bureau then appealed the decision to the Interior Board of Land Appeals alleging that the Administrative Law Judge erred in his geological and economic analysis in determining whether Pittsburgh had discovered a "valuable" deposit. In addition, the State of South Dakota petitioned to intervene and was permitted to file an amicus brief in which the State argued, inter alia, that the Administrative Law Judge had not given proper consideration to the cost of compliance with environmental quality statutes. Recognizing that Pittsburgh's proposed mining project would take 240 to 1,140 acres from a national forest and discard approximately 2.3 million tons of waste annually, the State argued that the Secretary must prepare an EIS before a mineral patent could issue. The Board determined that an EIS need not be prepared prior to the issuance of a mineral patent for these claims. United States v. Pittsburgh, 30 IBLA 388 (1977). The Board, however, set aside the decision of the Administrative Law Judge on other grounds and remanded the case for further hearings with respect to the expense of complying with environmental laws as well as any other issue which might arise.
 
 
 5
 Subsequently, the State filed an original action in federal district court seeking to compel preparation of an EIS prior to the issuance of a mineral patent naming as defendants the United States Department of the Interior and Pittsburgh. Both defendants moved to dismiss contending the issuance of a mineral patent is not a major federal action which requires an EIS, and Judge Bogue granted the motion. South Dakota v. Andrus, 462 F.Supp. 905 (D.S.D.1978).
 
 II
 
 6
 The issue on this appeal is whether the United States Department of the Interior is required by § 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(C) to file an EIS prior to the issuance of a mineral patent.[1]
 
 
 7
 Our starting point is, of course, the statutory language. Section 102(2)(C) provides in part that an EIS is required for "major Federal actions which significantly affecting the quality of the human environment."[2] Applied to this case, § 102(2)(C) mandates the filing of an EIS if (1) the issuance of a mineral patent is an "action" within the meaning of the provision, and (2) the alleged federal action is "major" in the sense that it significantly affects the quality of the human environment.
 
 
 8
 * We turn first to the question whether the granting of a mineral patent constitutes an "action" within the meaning of NEPA. As the district court noted, it is well established that the issuance of a mineral patent is a ministerial act. Both the Supreme Court, in a series of decisions in the early part of this century, Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 318-19, 50 S.Ct. 103, 105, 74 L.Ed. 445 (1929); Cameron v. United States, 252 U.S. 450, 454, 40 S.Ct. 410, 64 L.Ed. 659 (1920); Roberts v. United States, 176 U.S. 221, 231, 20 S.Ct. 376, 379, 44 L.Ed. 443 (1900), and, more recently, the Interior Board of Land Appeals, United States v. Kosanke Sand Corp., 12 IBLA 282, 290-91 (1973); United States v. O'Leary, 63 ID 341 (1956),[3] have so concluded.
 
 
 9
 Ministerial acts, however, have generally been held outside the ambit of NEPA's EIS requirement. Reasoning that the primary purpose of the impact statement is to aid agency decisionmaking, courts have indicated that nondiscretionary acts should be exempt from the requirement. N.A.A.C.P. v. Medical Center, Inc., 584 F.2d 619, 634 (2d Cir. 1978); Monroe County Conservation Council, Inc. v. Volpe, 472 F.2d 693, 697 (2d Cir. 1972); Environmental Defense Fund, Inc. v. Corps of Engineers of United States Army, 470 F.2d 289, 294 (8th Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973); Calvert Cliffs' Coordinating Committee, Inc. v. A.E.C., 146 U.S.App.D.C. 33, 38, 449 F.2d 1109, 1114 (D.C.Cir.1971).
 
 
 10
 In light of these decisions, it is at least doubtful that the Secretary's nondiscretionary approval of a mineral patent constitutes an "action" under § 102(2)(C).[4]
 
 B
 
 11
 But even if a ministerial act may in some circumstances fall within § 102(2) (C), we still cannot say that the issuance of a mineral patent is a "major" federal action under the statute. This conclusion does not stem from the court's belief that an agency itself must propose to build a facility and directly affect the environment in order to constitute a "major" federal action within the meaning of NEPA. We fully recognize that NEPA's impact statement procedure has been held to apply where the federal government grants a lease, Cady v. Morton, 527 F.2d 786 (9th Cir. 1975); Davis v. Morton, 469 F.2d 593 (10th Cir. 1972); issues a permit or license, Greene County Planning Board v. F.P.C., 455 F.2d 412 (2d Cir.), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); or approves or funds state highway projects, Iowa Citizens for Environmental Quality, Inc. v. Volpe, 487 F.2d 849 (8th Cir. 1973); Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971).
 
 
 12
 In each of these cases, however, an agency took a "major" federal action because it enabled a private party to act so as to significantly affect the environment. Such enablements have consistently been held subject to NEPA. See National Forest Preservation v. Butz, 485 F.2d 408, 412 (9th Cir. 1973), and authorities cited therein. But in the instant case, the granting of a mineral patent does not enable the private party, Pittsburgh, to do anything. Unlike the case where a lease, permit or license is required before the particular project can begin, the issuance of a mineral patent is not a precondition which enables a party to begin mining operations. 30 U.S.C. § 26.
 
 
 13
 As the Supreme Court noted in Union Oil Co. v. Smith, 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635 (1919), if a qualified locator of a mining claim locates, marks and records his claim to unappropriated public lands in accordance with federal and local law, he has an "exclusive right of possession to the extent of his claim as located, with the right to extract the minerals, even to exhaustion, without paying any royalty to the United States as owner, and without ever applying for a patent . . . ." Id. at 348-49, 39 S.Ct. at 311. Furthermore, in Wilbur v. United States ex rel. Krushnic, supra, 280 U.S. at 316-17, 50 S.Ct. at 104, the Court revealed:
 
 
 14
 The rule is established by innumerable decisions of this Court, and of state and lower federal courts, that, when the location of a mining claim is perfected under the law, it has the effect of a grant by the United States of the right of present and exclusive possession . . . so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent.
 
 
 15
 In recent years the mining laws governing the locating of mineral claims have remained unchanged, 30 U.S.C. §§ 22, 26, and modern decisions have continued to allow locators of mining claims to extract minerals without a patent provided they have met the statutory prerequisites. See, e. g., Lombardo Turquoise Milling & Mining Co. v. Hemanes, 430 F.Supp. 429 (D.Nev.1977).
 
 
 16
 In light of the fact that a mineral patent in actuality is not a federal determination which enables the party to mine, we conclude in present context that the granting of such a patent is not a "major" federal action within the meaning of § 102(2)(C).[5]
 
 III
 
 17
 In reaching this conclusion, we do not decide the question whether an EIS should be required at some point after the mineral patent has issued. While a federal agency need not prepare an EIS during the "germination process of a potential proposal," Kleppe v. Sierra Club, 427 U.S. 390, 401 n.12, 406, 96 S.Ct. 2718, 2728, 49 L.Ed.2d 576 (1976), this is not to say that at some later date an EIS will not be required. We note that Pittsburgh's proposed mining project is substantial and that if Pittsburgh decides to build the mine many actions may be necessary. For example, the claims at issue will presumedly need permits from the Forest Service for roads, water pipelines and railroad rights of way. 43 U.S.C. § 1761(a)(1) and (a)(6). Moreover, the company may possibly seek to make land exchanges with the Forest Service. We leave to another day the question whether an EIS would be required in connection with any one or more such actions.
 
 
 18
 It is sufficient for the moment to conclude that in the present case an EIS need not be filed prior to the issuance of a mineral patent. Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable John K. Regan, United States Senior District Judge, Eastern District of Missouri, sitting by designation
 
 
 [1]
 Relying on the fact that the Interior Board of Land Appeals remanded the case to the Administrative Law Judge and has not finally decided whether a patent should issue, the American Mining Congress in an amicus brief argues that this court should not entertain these proceedings until the parties have exhausted their administrative remedies. We do not agree. The doctrine of exhaustion of administrative remedies is not a strict jurisdictional requirement, but rather a flexible concept which must be tailored to the circumstances of the particular case. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Ecology Center of Louisiana, Inc. v. Coleman, 515 F.2d 860 (5th Cir. 1975). In the present case, the Department of the Interior has for all practical purposes decided the issue sought to be raised by the litigation, namely, whether an EIS need be filed prior to the issuance of a mineral patent. The remaining question before the agency is only tangentially relevant to the dispositive question before us. Louisiana Power & Light Co. v. F.P.C., 557 F.2d 1122, 1125 (5th Cir. 1977). Where, as here, the drawbacks of requiring exhaustion outweigh the advantages, courts have not hesitated in NEPA cases to make exceptions to the exhaustion doctrine. See, e. g., Jette v. Bergland, 579 F.2d 59, 62 (10th Cir. 1978); Arkansas Power & Light Co. v. F.P.C., 170 U.S.App.D.C. 393, 406-07, 517 F.2d 1223, 1236-37 (D.C.Cir.1975), cert. denied, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 341 (1976)
 
 
 [2]
 Section 102(2)(C) specifically provides in part that all agencies of the federal government shall:
 (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
 (i) the environmental impact of the proposed action,
 (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 (iii) alternatives to the proposed action,
 (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 [3]
 As the district court observed, South Dakota v. Andrus, supra, 462 F.Supp. at 907, the Board, in United States v. Kosanke Sand Corp., supra, concluded:
 Upon satisfaction of the requirements of the statute, the holder of a valid mining claim has an absolute right to a patent from the United States conveying fee title to the land within the claim, and the actions taken by the Secretary of the Interior in processing an application for patent by such claimant are not discretionary; issuance of a patent can be compelled by court order. (Citations omitted.) The patent may contain no conditions not authorized by law. (Citation omitted.) The claimant need not, however, apply for patent to preserve his property right in the claim, but may if he chooses continue to extract and freely dispose of the locatable minerals until the claim is exhausted, without ever having acquired full legal title to the land. (Citations omitted.) The patent, if issued, conveys fee simple title to the land within the claim, but does nothing to enlarge or diminish the claimant's right to its locatable mineral resources.
 
 
 [4]
 The Supreme Court has not yet resolved the issue of whether nondiscretionary actions fall within the scope of NEPA's EIS requirement. Although the Tenth Circuit in its 1975 decision, Scenic Rivers Ass'n v. Lynn, 520 F.2d 240, 245 (10th Cir. 1975), rev'd on other grounds sub nom. Flint Ridge Development Co. v. Scenic Rivers Ass'n, 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976), held that ministerial acts constitute "major federal actions" under NEPA, the Supreme Court in reversing did not discuss this issue
 
 
 [5]
 Assuming that the issuance of a mineral patent is a major federal action significantly affecting the quality of the human environment, appellant argues that requiring the Secretary to prepare an EIS is not incompatible with the Secretary's duties under the General Mining Act of 1872. Chelsea Neighborhood Ass'n v. United States Postal Service, 516 F.2d 378 (2d Cir. 1975); Louisiana v. F.P.C., 503 F.2d 844 (5th Cir. 1974); Ely v. Velde, 451 F.2d 1130 (4th Cir. 1971); Natural Resources Defense Council, Inc. v. Berklund, 458 F.Supp. 925 (D.D.C.1978), aff'd, 197 U.S.App.D.C. 298, 609 F.2d 553 (D.C.Cir.1979). Although we believe that appellant's contention is questionable, cf. Natural Resources Defense Council, Inc. v. Berklund, 197 U.S.App.D.C. 298, 609 F.2d 553 (D.C.Cir.1979), in light of our conclusion that the issuance of a mineral patent is not a major federal action, we find it unnecessary to address this argument