TOPAZ BERYLLIUM COMPANY, a Utah Corporation, Plaintiff,

and

American Mining Congress, a Colorado Non-Profit Corporation, Colorado Mining Association, a Colorado Non-Profit Corporation, Northwest Mining Association, a Washington Non-Profit Association, Alaska Mining Association, an Alaskan Non-Profit Association, Utah Mining Association, a Utah Non-Profit Corporation, Idaho Mining Association, an Idaho Non-Profit Association, New Mexico Mining Association, a New Mexico Non-Profit Association, Intervenors,

v.

UNITED STATES of America, United States Department of the Interior, Cecil Andrus, Secretary of the Interior, Bureau of Land Management, and Frank Gregg, Director of Bureau of Land Management, Defendants.

Civ. No. C–77–0405.

United States District Court, D. Utah, C. D.

Sept. 28, 1979.

Richard K. Sager and Alan L. Sullivan, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, Howard L. Edwards, The Anaconda Company, Denver, Colo., for plaintiff.

Jerry L. Haggard, Evans, Kitchel & Jenckes, Phoenix, Ariz., Raymond B. Holbrook, Senior & Senior, Salt Lake City, Utah, for intervenor, American Mining Congress.

Don H. Sherwood, William R. Marsh and James M. King, Dawson, Nagel, Sherman & Howard, Denver, Colo., Robert G. Pruitt, Jr., Oliver W. Gushee, Jr. and Thomas A. Nelson, Pruitt & Gushee, Salt Lake City, Utah, for intervenor, Colorado Mining Association.

F. Alan Fletcher, Constance K. Lundberg, Parsons, Behle & Latimer, Salt Lake City, Utah, for intervenors, Northwest Mining Association, Alaska Mining Association, Utah Mining Association, Idaho Mining Association and New Mexico Mining Association.

Ronald L. Rencher, U. S. Atty., Wallace Boyack, Asst. U. S. Atty., Salt Lake City, Utah, Kenneth G. Lee, U. S. Dept. of the Interior, Energy & Resources Division, Gerald S. Fish, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM and ORDER

JENKINS, District Judge.

This is an action to obtain a judgment: (1) declaring unlawful certain mining claim filing regulations promulgated by the Secretary of the Interior and compiled in 43 C.F.R. Subpart 3833, and (2) enjoining their enforcement.

Federal question jurisdiction is alleged (28 U.S.C. § 1331), as well as jurisdiction under the Administrative Procedure Act (5 U.S.C. §§ 702–704) and under statutes authorizing declaratory and injunctive relief against officers of the federal government (28 U.S.C. §§ 2201 and 2202).

Plaintiff Topaz Beryllium Company, a Utah company owning unpatented mining claims, commenced this action. The following parties have intervened as additional plaintiffs: the American Mining Congress, the Colorado Mining Association, the Northwest Mining Association, the Alaska Mining Association, the Utah Mining Association, the Idaho Mining Association, and the New Mexico Mining Association.

This matter is presently before the court on Cross-motions for Summary Judgment filed by all plaintiffs and defendants. The parties agree that there are no material facts in dispute.

The significant questions presented for determination are:

Are the regulations found at 43 C.F.R. subpart 3833, as finally amended April 5, 1979, providing for the filing of information with the Bureau of Land Management by present and future owners of unpatented mining claims on the public domain—and providing for the consequences of failing to so file—individually or collectively beyond the Congressionally delegated authority of the Secretary of the Interior to promulgate, and thus void?

Is regulation 43 C.F.R. § 3833.5(d), which allows the United States, in a government

initiated contest proceeding, to rely exclusively on its own records in determining to whom notice must personally be given, a deprivation of "due process" and thus constitutionally defective?

In my opinion, the answer to each question as framed is no.

My reasons are as follows:

From 1872 until 1976 the form and manner of pre-patent public recording of mining claims on federal lands was substantially governed by state statutes. Until the patent process was begun, a mining claimant had no express duty to tell the United States of his existence or the existence of his claim.

For over a hundred years the United States needed to look to the records of local governments to become aware of unpatented mining claims on its own lands.

Early on there was recognition of possible difficulties with the adopted system and practice. Suggestions for modification of the recording system were made. *See, Report of the Public Lands Commission of 1879,* reprinted in *Use and Abuse of America's Natural Resources,* S. Bruchey, 1972.

In 1964, Congress directed the creation of a bipartisan commission to conduct a review of existing public land laws and regulations and recommend necessary revisions. 43 U.S.C. §§ 1391–1400. The creation of the commission, the Public Land Law Review Commission (PLLRC), was prompted by the increased use of the public lands following World War II and the expressed inability of Congress and administrators of the public lands to resolve the conflicting and ongoing demands made on the lands. PLLRC, *One Third the Nation's Land* at ix (1970). After several years of studying all aspects of the management of the public domain, the PLLRC made the following recommendation for recordation of mining claims:

Congress should establish a fair notice procedure (a) to clear the public lands of long-dormant mining claims, and (b) to provide the holders of existing mining claims an option to perfect their claims under the revised location provisions we recommend. Under such a procedure, failure to file proper notice of pre-existing claims with county and Federal agencies within a reasonable time would constitute conclusive evidence of abandonment.

PLLRC, *supra,* at 130 (1970)

This recommendation was a consequence of deficiencies of the Mining Law of 1872 whereby, "claims long since dormant remain as clouds-on-title, and land managers do not know where claims are located." PLLRC, *supra,* at 124.

Commentators also have recognized these same deficiencies and proposed a comparable solution. *See* e. g., Strauss, *Mining Claims on Public Lands: A Study of Interior Department Procedures,* Utah Law Rev. 185, 195–224 (Summer 1974).

In response to the PLLRC report and its own concern over the management of publicly owned resources and lands, Congress began to consider legislation to simplify and modernize the laws governing their use and disposition. The work of the PLLRC and of Congress culminated in the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701 *et seq.* (hereinafter referred to as the FLPMA) passed October 21, 1976. It is to that act that we must principally look for the authority of the Secretary of the Interior to promulgate the disputed regulations.

The Act repealed scores of outdated statutes, provided the BLM with authority for land-use planning, revised the laws governing sales, exchanges, and rights-of-way and established improved range management procedures. Congress adopted the recommendation of the PLLRC and others and required a federal repository, showing where, when and by whom mining claims were located, and further required that such records be kept up to date.

Section 314 of the FLPMA, 43 U.S.C. § 1744, requires mining claimants to file with the BLM both an initial notice of the claim and annual statements showing continued interest in the claim. For claims located prior to the passage of the FLPMA, these requirements include:

a. Filing both "a copy of the official record of the notice of location or certificate of location" and an affidavit of assessment work or notice of intention to hold the claim, by October 22, 1979; and

b. Filing an affidavit of assessment work or notice of intention to hold the claim annually thereafter.

For claims located after the passage of the FLPMA, statutory requirements include:

a. Filing "a copy of the official record of the notice of location or certificate of location" within 90 days after location; and

b. Filing an affidavit of assessment work or notice of intention to hold the mining claim annually thereafter.

Section 314 also provides that the documents filed with the BLM must contain a description of the mining claim sufficient to locate it on the ground, and that failure to file either the initial or annual documents, "shall be deemed *conclusively* to constitute an abandonment of the mining claim . ." (emphasis added).

The legislative history of Section 314 reveals an extensive discussion by the Senate, explaining the need for a federal "recordation" requirement and what the statute was intended to accomplish:

> Although the Committee considered . . . proposals [to completely amend the Mining Law] to be beyond the scope of S. 507, as ordered reported, the Committee did address a particular procedural problem concerning the registration of mining claims—a problem which is particularly frustrating to the public land manager. The source of this problem is what is often termed "stale claims." There is no provision in the 1872 Mining Law, as amended, requiring notice to the Federal government by a mining claimant of the location of his claim. The mining law only requires compliance with local recording requirements, which usually means simply an entry in the general county land records. Consequently, Federal land managers do not have an easy way of discovering which Federal lands

are subject to either valid or invalid mining claim locations. According to some estimates, there are presently more than 6,000,000 unpatented claims in the public lands, excluding national forests, and more than half of the units of the National Forest System are reputedly covered by mining claims. Of course, the vast majority of these claims will never be pursued, and do not directly interfere with land management. They do, however, create significant uncertainty regarding the actual extent of valid locations. Furthermore, as unpatented mining locations can be bought and sold, they have become the basis for many unauthorized occupancies on the public lands. These claims constitute a cloud on the title of a large portion of the Federal lands.

> Subsection (a) would establish the recording system so necessary for Federal land planners and managers. It would require that all mining claims under the 1872 Mining Law, as amended, be recorded by the claimants with the Secretary within two years after the enactment of S. 507, as ordered reported, or within 30 days of the location of the claim, whichever is later. *Any claim not recorded is to be conclusively presumed abandoned and will be void.*

> This recording requirement is not intended to supersede nor displace the existing recording requirements under State law. As such, its purpose is to advise the Federal land managing agency, as proprietor, of the existence of mining claims. The agency is not intended to be the official recording office for all ancillary documents (i. e., wills, mechanic's liens, conveyances, tax liens, court judgments, etc.). The county public records would remain, as before, the official repository of such recorded documents. S.Rep.No.94–583, 94th Cong. 2nd Sess. at 64, 65 (1975). (As cited in defendants' Memorandum, pp. 5–6, emphasis added).

Congress directed that the broad outlines of the FLPMA, including 43 U.S.C. § 1744, be "filled in" by regulations to be promulgated by the Secretary. *See,* 43 U.S.C.

§§ 1701(a)(5), 1733(a) and 1740. 43 U.S.C. § 1740 states, ". . . The Secretary, with respect to the public lands, *shall* promulgate rules and regulations *to carry out the purposes of this Act and other laws applicable to the public lands . . .*" (emphasis added).

The word is *shall*—not may.

The purposes of the FLPMA are plural. The Act has a multitude of purposes—not just the cleansing of the public domain of dormant and unpursued mining claims. Some purposes, among others, are land use planning and management; the identification of lands subject to valid locations and invalid locations; and the identification of unauthorized occupancies. Most of the regulatory requirements relate to the Secretary's process of acquiring accurate information to enable him to create an accurate and perpetual inventory of mining claims on the public lands and of those persons who assert an interest in mining claims on public lands.

Plaintiffs, individually or collectively, attack almost every provision in the regulations that does not precisely mirror 43 U.S.C. § 1744, including, but not limited to, the following provisions:

(a) that the owners of a claim give their names and addresses to' the BLM (43 C.F.R. §§ 3833.0–5(e) and 3833.1–2(c)(2));

(b) that a description in accordance with 43 C.F.R. § 3833.1–2(c)(5)–(8) is necessary to comply with the statutory requirement of a description of the claim sufficient to locate it on the ground;

(c) that a copy of an instrument amending the description of the claim must be filed with the BLM (43 C.F.R. § 3833.0–5(i));

(d) that a $5.00 service fee must accompany the initial BLM filing on each mining claim (43 C.F.R. § 3833.1–2(d));

(e) that certain information must be furnished in the statutorily required annual filings with the BLM (43 C.F.R. §§ 3833.2–2 and 3833.2–3);

(f) that a new owner of a claim must identify himself to the BLM through a notice of transfer and that the BLM will rely on its own records in giving notice in contest proceedings (43 C.F.R. §§ 3833.3 and 3833.5(d));

(g) that a failure to make statutorily required filings not only renders the claim "abandoned" but also "void". (43 C.F.R. § 3833.4).

Plaintiffs argue that the regulations violate 43 U.S.C. § 1701(b), which states that the policies of the FLPMA will become effective only upon enactment of "specific statutory authority". Plaintiffs also argue that the regulations are barred by 43 U.S.C. § 1732, which states that the FLPMA does not amend the Mining Law of 1872 or impair claims or the rights of locators under that law, "[e]xcept as provided in section[s] 1744 . . . of this title . . .". However 43 U.S.C. § 1744 is "specific statutory authority" for ·the regulations. 43 U.S.C. § 1732 does not bar the regulations unless they are inconsistent with the § 1744 amendments to the Mining Law of 1872.

Plaintiffs characterize the Secretary's position as urging unbridled discretion to regulate, unless there is a statutory prohibition. This characterization misstates the Secretary's position. The Secretary merely asserts that under broad statutory delegations such as 43 U.S.C. § 1740, he has the authority and the duty to obtain information reasonably related to the efficient administration of the law he is called on to enforce, and he may obtain such information from the beneficiaries of that law. This is a settled principal of administrative law followed in this circuit and binding on this court. *See, Rigby v. Rasmussen*, 275 F.2d 861 (10th Cir. 1960). For a general discussion of the concept of legislative delegation of authority, *see*, Davis, *Administrative Law Treatise*, Vol. 1, pp. 149–223 (2d ed. 1968).

Congress could not foresee and did not attempt to foresee all of the information that might be needed to efficiently administer 43 U.S.C. § 1744 and to coordinate its operation with the rest of the

FLPMA and with other public land laws. These reasons were among those Congress had for delegating broad authority to the Secretary in 43 U.S.C. § 1740. In response to 43 U.S.C. § 1740, the Secretary made a good faith attempt to determine the purposes of 43 U.S.C. § 1744 and to regulate in accordance with those purposes. The regulations at 43 C.F.R. Subpart 3833 were adopted pursuant to appropriate notice and comment procedures under the Administrative Procedure Act. The burden of persuasion is on the plaintiffs to overcome a presumption that the regulations are valid, by showing that the regulations are patently arbitrary and capricious or plainly inconsistent with statutory authority. *See, Rigby v. Rasmussen, supra,* and *United Mine Workers of America v. Kleppe,* 561 F.2d 1258 (7th Cir. 1977).

Are the regulations an appropriate and related and reasonable means for achieving a desired Congressional end? They are consistent with the language and legislative history of the FLPMA. They are related to the statute; they are reasonable; they are within the periphery of power granted to the Secretary.

The statute provides a consequence for failing to file the mandated documents that, at first reading, appears harsh. But, no one complains of the statute and its "deeming" that unfiled and unpursued claims are "abandoned". The recommendation of the PLLRC, which found form in the statute, makes good sense. It fairly frees up the public domain from dormant and antiquated claims in which no one expresses a current and ongoing interest.

The statutory consequence of "deemed" abandonment, as interpreted by the regulations, renders a claim "void", and rightly so, in light of the legislative history which equates "deemed" abandonment with "extinguishment". House Conf.Rep.No.94–1724, 94th Cong., 2d Sess. at 62, 1976 U.S. Code Cong. & Admin.News at 6175, 6223. The beneficiary of "deemed" abandonment is not a stranger who happens upon the claim in the records or on the ground. The beneficiary is the owner of the land, the United States. The claim no longer exists. It is no longer subject to acquisition, succession, resuscitation or resurrection by anyone. He who is interested must start anew. And that, as I view it, is what Congress intended.

Plaintiffs allege that there is danger the regulations will be applied by the Secretary so that if a federal "filing" on a claim includes all of the information required by statute but not all of the information required by regulation, the Secretary may "deem" the claim abandoned. On their face, 43 C.F.R. §§ 3833.4(a), 3833.1–2 and 3833.2–1 do not authorize "deemed" abandonment. Furthermore, 43 U.S.C. § 1744(c) provides that a claim which is "filed" upon cannot as a matter of law be "deemed abandoned". The statutory or regulatory clean broom cannot sweep such a claim from existence. It exists and the United States knows of its existence.

Moreover, even if a claim is "deemed abandoned" by the agency, this results in an order that is subject to administrative appeal and judicial review. *See, Transcript of Hearing on Motions,* dated August 20, 1979, at p. 94, on file in this case. Administrative appeal or judicial review of agency action in concrete fact situations may further define the language of the statute and the regulations. However, the court is not faced with such a fact situation at the present time, and is only asked to determine whether the regulations are valid, *on their face.* The court will not assume as some plaintiffs assume, that the Secretary will apply the regulations as harshly as possible.

A serious matter, well-advanced by the initial plaintiff Topaz Beryllium, is that under the regulatory scheme, a bona fide owner of an unpatented claim, who does not notify the government of his existence, need not be given personal notice in a contest proceeding. This is true. However, as I read and construe 43 C.F.R. § 3833.5(d), it is limited to a government-initiated contest proceeding. This construction is conceded by the Secretary. *See, Transcript, supra,* at p. 90. The scheme does indeed place the burden on the claimant to tell the government that he wants to be notified.

■ One must distinguish a government-initiated contest proceeding from a contest proceeding initiated by a third party.[1] If a third party need only look to the government records I would have serious questions as to the compatibility of this regulation with the Fifth Amendment of the Constitution. A third party must look to the local records, the "official repositories", to determine to whom he must give notice in a contest proceeding. However, where the government is the initiating party, it appears to me to be reasonable to require an interested claimant to make sure his name appears in the government records as an interested party, and to require his successor in interest, within a reasonable time, to tell the government of a change of ownership. After all, it is government land in which the claimant seeks an interest.

All the regulation really requires is that the claimant notify the government of his interest at the time the interest is created, rather than at the time a patent is sought. It is easier and more efficient to require millions of claim holders to say to the government early on, "tell me" if you intend to challenge my interest, than to require the government to ferret out millions of interested persons from local records scattered in thousands of locations.

The foregoing analysis is premised on a construction of the regulations requiring the government, in a government-initiated contest proceeding, to search all of the records filed with it pursuant to 43 C.F.R. Subpart 3833, not just notices of transfer. The Secretary concedes that if a new owner is identified as such on one of the required annual filings, his failure to file a notice of transfer would not authorize the government to forego giving him notice of a contest. *See, Transcript, supra,* at p. 88.

I do not find such a procedure constitutionally offensive—indeed it provides an opportunity for persons seeking to perfect an ownership interest in government land to assure themselves of adequate notice in a government-initiated contest proceeding.

■ Regarding objections to the $5.00 filing fee, 43 U.S.C. § 1734 authorizes such fees if they are "reasonable". The filing fee, rather than being onerous and unlawful, is in reality modest and moderate. The method of computation was rational, reasonable and extremely conservative. In short, there is nothing wrong with the fee.

All of the other regulations found at 43 C.F.R. Subpart 3833 have been scrutinized, whether or not they have been discussed in detail herein, and I find that they are reasonable and that plaintiffs' objections to these regulations are without merit.

Therefore, in light of the foregoing, it is ORDERED that the Motions for Summary Judgment filed by all plaintiffs are hereby denied, the Motion for Summary Judgment filed by defendants is hereby granted, and this action is hereby DISMISSED.

---

1. Government contests are authorized by 43 C.F.R. § 4.451–1 (1978), and private contests are authorized by 43 C.F.R. § 4.450–1 (1978).