**M.E. ROGERS, Plaintiff,**

v.

**UNITED STATES of America, United States Department of the Interior, Cecil Andrus, Secretary of the Interior, Bureau of Land Management, and Frank Gregg, Director of Bureau of Land Management, Defendants.**

**No. CV 80–114–H.**

United States District Court,
D. Montana,
Helena Division.

June 28, 1982.

Ward A. Shanahan, Gough, Shanahan, Johnson & Waterman, Helena, Mont., for plaintiff.

Gerald S. Fish, Dept. of Justice, Washington, D.C., and Frank D. Meglen, Asst. U.S. Atty., Billings, Mont., for defendants.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment. The issue presented is whether an irrebuttable presumption that an unfiled missing claim is abandoned, violates the due process clause of the Fifth Amendment. Because the Court finds the statute in question to be unconstitutional, plaintiff's motion for summary judgment is granted.

### I. FACTUAL BACKGROUND

This case concerns ten mining claims owned by plaintiff M.E. Rogers. On October 21, 1950, Herbert W. Carver located the Ross, Stable Vein and Carlton Lode Mining Claims on United States government land located in Broadwater County, Montana. On November 20, 1950, Carver filed these three claims with the Broadwater County clerk and recorder. Although the facts are unclear, it appears that plaintiff Rogers bought these three claims from one of Carver's successors in title sometime in 1967. These three claims also seem to have been the subject of much litigation, a lis pendens having been filed by Rogers in 1975 and three lawsuits having been filed in the Montana state courts. Rogers located one of the other mining claims (the St. Francis Xavier Lode Mining Claim) on October 10, 1964, in Broadwater County, and recorded it on December 17, 1964. Rogers located the last six claims on September 26, 1967, also in Broadwater County, and recorded them on October 31, 1967.

Rogers apparently made no effort to notify the United States government of these ten mining claims until September 24, 1979, when Rogers filed with the Bureau of Land Management two maps showing the location of each of the claims. On October 16,

1979, BLM notified Rogers that, according to a federal statute (43 U.S.C. § 1744 (1976)), Rogers would have to supply a copy of the official record of the notice of the location. Plaintiff received this letter on October 26, 1979, and mailed the required documents a few days later. BLM received the correct copies required for filing on November 2, 1979. However, because the filing deadline for filing all unpatented mining claims was October 21, 1979, and this date had already passed, BLM refused to recognize the claims.

Plaintiff appealed to the Interior Board of Land Appeals, which upheld the initial BLM decision of invalidity on May 7, 1980. Although BLM made its decision without prejudice to Rogers' right to relocate his claims, Rogers fears that at least four of the claims lie within the Elkhorn Wilderness Study Area and will not be available for mining. On July 3, 1980, Rogers filed this action seeking judicial review of the BLM determination. Both Rogers and BLM have filed motions for summary judgment.

This case exposes rather vividly many of the problems surrounding unpatented mining claims on government lands. The Mining Law of 1872 (30 U.S.C. § 22 *et seq.* (1976)) authorized mining claims by any United States citizen who was able to locate a claim on lands belonging to the United States. It was contemplated that most miners, seeking to perfect a claim, would follow the procedures for patenting their mining claim under 30 U.S.C. § 29 (1976). Until the patent process was begun, however, the owner of a mining claim was under no duty to notify the United States of his pending claim. This created obvious title problems with regard to all

government land because, in order to discover the existence of unpatented mining claims, the United States was required to search all local government records of recorded mining claims.

In 1976, with the passage of the Federal Land Policy and Management Act (FLPMA), Congress attempted to solve the problem of dormant unpatented mining claims. This act created a federal repository, describing where, when, and by whom mining claims had been located. *Topaz Beryllium Co. v. United States,* 479 F.Supp. 309, 312 (D.Utah 1979), aff'd, 649 F.2d 775 (10th Cir.1981). The act also required owners of mining claims to file, before specific deadlines, notices of mining claims and annual statements showing continued interest in the mining claims. 43 U.S.C. § 1744 (1976).[1] It is this filing statute with which plaintiff here has apparently failed to comply.

## II. EXISTENCE OF A PROPERTY RIGHT

▆ To establish that his due process rights have been infringed, plaintiff must demonstrate that the laws creating these rights give rise to a "legitimate claim of entitlement." *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978). In the case of a mining claim such as plaintiff possesses, the United States Supreme Court has held that an unpatented mining claim is a unique form of property which imparts a possessory mineral interest in land. *Best v. Humboldt Mining Co.,* 371 U.S. 334, 335, 83 S.Ct. 379, 381–82, 9 L.Ed.2d 350 (1963). *See Western Mining Council v. Watt,* 643 F.2d 618, 628 (9th

---

**1.** This statute provides as follows:

(a) The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection ...:

(1) File for record in the office where the location notice of certificate is recorded either a notice of intention to hold the mining claim

..., an affidavit of assessment work performed thereon, or a detailed report provided by section 28–1 of Title 30, relating thereto.

(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.

43 U.S.C. § 1744(a) (1976).

Cir.1981). A mining claim has been described as "property in the fullest sense of that term." *Wilbur v. United States ex rel. Krushnic,* 280 U.S. 306, 316–17, 50 S.Ct. 103, 104, 74 L.Ed. 445 (1930). We thus have little difficulty in concluding that plaintiff's unpatented mining claim is sufficient to invoke the property strictures of the Fifth Amendment's due process clause.

The arguments of the United States asserting that an unpatented mining claim is not a property right seem to confuse title to real property with property rights under the Fifth Amendment. The United States relies upon the proposition that unpatented mining claims are "valid against the United States" only if "there has been a discovery of mineral within the limits of the claim, if the lands are still mineral, and if other statutory requirements have been met." *Best v. Humboldt Mining Co., supra,* 371 U.S. at 336, 83 S.Ct. at 382; *Cameron v. United States,* 252 U.S. 450, 456, 40 S.Ct. 410, 411, 64 L.Ed. 659 (1920). The validity of a mining claim as against the United States goes to the question of whether the holder of the claim has superior title to that of the United States. *See Best v. Humboldt Mining Co., supra,* 371 U.S. at 336, 83 S.Ct. at 382. Apparently the United States would have a mining claim owner prevail in a quiet title action before he could assert a Fifth Amendment right. This is not in keeping with the recognition that an unpatented mining claim is "a unique form of property" regardless of whether it is superior to the title of the United States.

One of the problems with this argument of invalidity of plaintiff's claim is that it relies in part upon a tautologous bit of logic. The United States argues that an unpatented mining claim is invalid unless all relevant laws with regard to mining location are complied with. *Cameron v. United States, supra,* 252 U.S. at 460, 40 S.Ct. at 412. One of the laws with which plaintiff has failed to comply is 43 U.S.C. § 1744(a) (1976), the statute whose constitutionality plaintiff wishes to challenge. Therefore, because plaintiff has not complied with the allegedly unconstitutional

statute, he cannot challenge the statute's constitutionality. Clearly, the argument of the United States would handily preclude all litigation concerning any filing statute's constitutionality, for claims invalidated by the statute would not give rise to a constitutionally protected right and claims which complied with the statute would not impart standing to sue.

■ Furthermore, the United States ignores the fact that, prior to October 21, 1976 (the filing deadline created by § 1744(a)), plaintiff had complied with all applicable laws and therefore must have possessed a valid (albeit unpatented) mining claim. It is our understanding that, prior to the passage of FLPMA in 1976, the holder of an unpatented mining claim possessed a property right which could not be eliminated without at least an administrative hearing. As the United States Supreme Court declared in 1920, in speaking of claims to public lands,

> Of course, the Land Department has no power to strike down any claim arbitrarily, but so long as the legal title remains in the government it does have power, *after proper notice and upon adequate hearing,* to determine whether the claim is valid, and if it be found invalid, to declare it null and void.

*Cameron v. United States, supra,* 252 U.S. at 460, 40 S.Ct. at 412 (emphasis added). We therefore conclude that, with passage of FLPMA, the holder of an unpatented mining claim who failed to comply with FLPMA's filing requirements was stripped of a property right which had previously been recognized unequivocally by the courts.

We take particular notice of the Ninth Circuit's discussion of unpatented mining claims in *Western Mineral Council v. Watt, supra,* 643 F.2d at 628. The plaintiffs in *Western Mineral Council,* like the plaintiff in this case, were owners of unpatented mining claims located prior to the passage of FLPMA. They, like the plaintiff here, had failed to comply with the filing requirements of § 1744. Nonethe-

less, the Ninth Circuit had little trouble in finding that a property right held by plaintiffs had been threatened:

> Because an unpatented mining claim is a unique form of property which created in the owners a possessory interest in the land ... the loss of such an interest would constitute a substantial injury. We believe that the allegations in this regard indicate a sufficiently real and immediate threat of injury to give rise to a justiciable, actual controversy, and present a sufficiently immediate threat of injury to the individual plaintiffs to give them standing to challenge these provisions. [Citations and footnotes omitted.]

*Id.* at 628. We similarly hold that plaintiff here has adequately alleged infringement of a property right.

### III. COMPLIANCE WITH FILING REQUIREMENTS

One of the issues raised by plaintiff is whether he has "substantially" complied with the filing requirements of 43 U.S.C. § 1744(a) (1976). This statute provides that owners of unpatented mining claims located prior to October 21, 1976, shall file with the Bureau of Land Management, prior to October 21, 1979, a copy of the original *recording documents.* Plaintiff in the instant case initially filed, instead of the copies of the official recording documents required by the statute, two maps showing the location of each of the claims. Although plaintiff later filed the required documents, this was not done until after the October 21, 1979, filing deadline. It thus seems clear that plaintiff failed to comply with the filing requirements of the statute.

Apparently conceding noncompliance, plaintiff urges that his initial filing "sub-

stantially" complied with 43 U.S.C. § 1744 (1976). In support of this argument, plaintiff points out that the presumption of abandonment created by 43 U.S.C. § 1744(c) (1976)[2] need not be applied in every case. Exceptions to the filing requirements may be made where "the instrument is defective." Conceding that he filed no defective instruments, plaintiff then reasons instead that his own filing of the maps instead of the copies of recording documents was similarly defective. Therefore, concludes plaintiff, he has substantially complied with the statute's filing requirements.

■ Unfortunately, the language of § 1744(c) provides no support whatsoever for plaintiff's theories of substantial compliance. It is true that section (c) creates three exceptions to the mining claim filing requirement for (1) filing of defective instruments, (2) untimely filing under other federal laws, and (3) filing by less than all the actual owners. But plaintiff's map filing fails to qualify for any of the exceptions. In essence, plaintiff argues that the creation of the three exceptions suggests a legislative intent to create a general "substantial compliance" exception, allowing any form of filing which puts the government on notice of mining claims to satisfy the filing statute. Carving out such a substantial compliance exception would clearly defy the "plain meaning" rule of statutory construction. *See Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). In addition, creating a judicial filing exception to accommodate the plaintiff would run the risk of defeating the entire purpose of the filing statute, which was "to free the public lands from state claims in order to permit sound land use planning and management." *Western Mining Council v. Watt,*

---

**2.** The complete text of this statute provides as follows:

> (c) The failure to file such instruments as required by subsections (a) and (b) of this section shall be deemed conclusively to constitute an abandonment of the mining claim or mill or tunnel site by the owner, but it shall not be considered a failure to file if the instru-

ment is defective or not timely filed for record under other Federal laws permitting filing or recording thereof, or if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim or mill or tunnel site.

43 U.S.C. § 1744(c) (1976).

643 F.2d 618, 630 (9th Cir.1981). For these reasons, plaintiff has failed to establish compliance with the statutory filing requirements for pre-1976 mining claims.

## IV. CONSTITUTIONALITY OF THE FILING STATUTE

■ Plaintiff raises a two-pronged due process attack against the filing statutes. First, he insists that his substantive due process rights have been infringed by an unreasonable invalidation of his property rights. This argument has been rejected by the Ninth Circuit in *Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981), in which the Court stated,

> The legislative history of § 1744 makes it clear that on their face the filing requirements are neither an arbitrary nor irrational way of realizing these permissible governmental objectives, and we reject plaintiffs' conclusion to the contrary.

*Id.* at 629. This same rationale would also obtain as to any "as applied" constitutional attack. It therefore seems proper to uphold the filing statutes on substantive due process grounds.

The second constitutional question raised by plaintiff involves procedural due process. Plaintiff asserts that the mining claim filing statutes, especially the irrebuttable presumption of abandonment, destroy a valuable property right without affording plaintiff a right to a hearing. Plaintiff relies upon *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), two cases in which the United States Supreme Court struck down irrebuttable presumption stat-

utes somewhat similar to the abandonment presumption in the instant case.[3] The Ninth Circuit explicitly declined to address this issue in *Western Mining Council v. Watt, supra,* 643 F.2d at 630 n. 18. Nor has this Court yet had an opportunity to consider this question.[4]

We must concede at the outset of this discussion that "irrebuttable presumption" analysis has been subject to considerable censure from the commentators. *See, e.g.,* Note, *The Irrebuttable Presumption Doctrine in the Supreme Court,* 87 Harv.L. Rev. 1534 (1974); L. Tribe, *American Constitutional Law* § 16–32 (1978). It has not fared too much better with many courts. *See, e.g., Oldham v. Ehrlich,* 617 F.2d 163, 167 n. 6 (1980). Indeed, Chief Justice Burger has referred to the irrebuttable presumption doctrine as "very dubious law." *Vlandis v. Kline, supra,* 412 U.S. at 459, 93 S.Ct. at 2240 (Burger, C.J., dissenting). One critic has gone so far as to conclude that "[t]here appears to be no justification for the irrebuttable presumption doctrine" and that it should be replaced by equal protection analysis. Note, *The Irrebuttable Presumption Doctrine, supra,* 87 Harv.L.Rev. at 1556. Nonetheless, the irrebuttable presumption analysis continues to be used by the courts as one method to assess whether a party's rights of procedural due process have been violated. *See, e.g., Edelberg v. Illinois Racing Board,* 540 F.2d 279 (7th Cir.1976); *Andrews v. Drew Municipal Separate School District,* 507 F.2d 611 (5th Cir.1975); *Hollenbaugh v. Carnegie Free Library,* 436 F.Supp. 1328 (W.D.Pa.1977); *Hurley v. Van Lare,* 380 F.Supp. 167 (S. and E.D.N. Y.1974).

---

**3.** The presumption in *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), involved an irrebuttable presumption that, because the legal address of a student, if married, was outside the State at the time of application for admission or, if single, was outside the State at some point during the preceding year, he remains a nonresident as long as he is a student in Connecticut. *Id.* at 442–43, 93 S.Ct. at 2231–32. The presumption in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), involved a statute which presumed that unwed

fathers were unfit to raise their illegitimate children. *Id.* at 649–50, 92 S.Ct. at 1211–12.

**4.** In *Northwest Citizens for Wilderness Mining Company v. BLM,* CV–78–46–M (D.Mont., June 19, 1979), Judge Russell E. Smith considered the validity of certain filing regulations promulgated under FLPMA. The issue of the constitutionality of the presumption of abandonment was never reached.

To establish a procedural due process violation, a plaintiff must demonstrate the deprivation of a protected liberty or property interest without adequate procedural safeguards. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The interest may arise under either state or federal law. *Meachum v. Fano*, 427 U.S. 215, 223, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). To determine which procedural protections are required, the court must analyze the extent to which the complaining party might suffer "grievous loss," the nature of the governmental function involved, and the nature of the private interest affected. *Morrissey v. Brewer, supra,* 408 U.S. at 481–82, 92 S.Ct. at 2600–01. Procedural due process thus requires a flexible remedy molded to the needs of a particular situation. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

However, once a statute is found to be an "irrebuttable presumption," the focus of the balancing formula changes somewhat. If a statute creates an irrebuttable presumption, due process demands a hearing to provide the party affected an opportunity to rebut the presumption wherever "the presumption is not necessarily or universally true in fact" and the government has available "reasonable alternative means of making the crucial determination." *Vlandis v. Kline, supra,* 412 U.S. at 452, 93 S.Ct. at 2236. Although Chief Justice Burger refers to this analysis as "the language of strict scrutiny," *id.* at 460, 93 S.Ct. at 2240 (Burger, C.J., dissenting), the irrebuttable presumption doctrine does not concern itself with fundamental rights or suspect classes. Instead, the doctrine examines a statutory scheme solely to determine whether a hearing is required before threatened interests can be altered.

In the instant case, 43 U.S.C. § 1744(a) (1976) sets up an irrebuttable presumption that all mining claims located before October 21, 1976, and not filed with BLM before October 21, 1979, are presumed to be abandoned. Three exceptions to this presumption are made: one for defective instruments, one for untimely filing under other federal laws, and one for filing by less than all the record owners. No exception is made for timely but defective filing, such as that accomplished by plaintiff Rogers in this case. The statute allows no hearing and no opportunity for a mining claimant to demonstrate facts indicating that no abandonment occurred. The statute places an absolute duty upon all mining claimants to either timely file the correct documents with BLM or forfeit their claims.[5]

We have little doubt that the irrebuttable presumption adopted by Congress accomplishes FLPMA's objective of freeing up "the public domain from dormant and antiquated claims in which no one expresses a current and ongoing interest." *Topaz Beryllium Co. v. United States,* 479 F.Supp. 309, 315 (D.Utah 1979), *aff'd* 649 F.2d 775 (10th Cir.1981). However, we believe the means adopted to achieve this goal destroys indiscriminately both abandoned and nonabandoned mining claims. The presumption itself is not "necessarily or universally true in fact." The plaintiff in the instant case is an excellent example of a mining claimant who actively and publicly pursued his mining claims. He attempted in good faith to comply with the notice requirements of FLPMA and filed, prior to the filing deadline, all the information necessary to put BLM on notice of his claims. Yet now, instead of allowing plaintiff a hearing to demonstrate his actual intent and compliance efforts, BLM conclusively presumes plaintiff intended to abandon his claims, despite overwhelming evidence to the contrary.

---

5. The government would have us distinguish between the presumption of abandonment and a declaration of a claim's invalidity. We fail to discern any grounds for such a distinction. As we interpret it, the conclusive presumption of abandonment is, in essence a conclusive presumption of invalidity. As to the government's analogy between unpatented mining claims and scrip rights, we have found no cases concerning scrip rights which address the constitutional issues raised here.

We do not believe that allowing a hearing to a mining claimant prior to invalidating his unpatented mining claim would be overly burdensome to the government. It is certainly difficult to understand how such a hearing would be any more expensive than the judicial action already required before a patented mining claim may be vacated. In this regard, we note that a patent for a mining claim can only be vacated or limited by "regular judicial proceedings taken in the name of the government for that special purpose." *Steel v. Smelting Co.*, 106 U.S. 447, 454, 1 S.Ct. 389, 395, 27 L.Ed. 226 (1882). It is true that a patented mining claim, unlike an unpatented mining claim, is "a grant by the United States of the right of present and exclusive possession." *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 316, 50 S.Ct. 103, 104, 74 L.Ed. 445 (1930). Even an unpatented mining claim, however, is "property in the fullest sense of that term." *Id.* at 316–17, 50 S.Ct. at 104. We concede that judicial proceedings should not be required to invalidate an unpatented mining claim. But it is not asking too much of the government to provide the holder of property in the form of an unpatented mining claim a hearing before the BLM upon whether he has abandoned his mining claim.

We therefore grant plaintiff's motion for summary judgment and hold that 43 U.S.C. § 1744(c) (1976) is an unconstitutional violation of due process insofar as it creates an irrebuttable presumption of abandonment.

## V. PLAINTIFF'S EVIDENTIARY MOTIONS

Plaintiff has filed a motion to require that the defendants be charged with constructive notice of the 1975 lis pendens filed on the Ross, Stable Vein, and Carlton claims. Plaintiff also moves this Court to take judicial notice of the records of the three state court actions, apparently involving these same claims. As defendants note in their brief, "[t]he rule confining judicial review of agency action to the administrative record applies not only in proceedings involving formal evidentiary-type hearings but also to informal agency adjudications on a nonevidentiary record." *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 840–41 (D.C.Cir.1976). Because the records of the state court litigation were not before BLM when it made its decision to invalidate plaintiff's mining claims, defendants argue that these records cannot be admitted in an action for judicial review.

In the usual administrative case, we would have no problem with defendants' argument. However, in the instant case, plaintiff is attacking the constitutionality of the statute under which BLM was operating. As noted by the United States Supreme Court,

Constitutional questions are obviously unsuited to resolution in administrative hearing proceedings and, therefore, access to the courts is essential to the decision of such questions.

*Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). In the instant case, plaintiff was not even afforded a hearing on his constitutional arguments. The administrative record before the Court consists only of the decision written by the Interior Board of Land Appeals. Since judicial review in this Court seems to have been the first opportunity plaintiff has had to raise his constitutional attacks, it is necessary that this Court take judicial notice of the state court records concerning plaintiff's mining claims. Therefore, insofar as the state court records supply evidence of plaintiff's attempts to protect his mining claims, we take judicial notice of these records. We note, however, that we do not find the evidence provided by these records essential to our consideration of the filing statute's constitutionality.

An appropriate order granting summary judgment for the plaintiff and taking judicial notice of state court proceedings shall issue in accordance with this Memorandum Opinion.